I'm Dominic Cappecci. I'm representing Petitioner in this matter this morning on behalf of the Law Offices of Kaiser and Cappecci. I'm with my partner, Jack I. Kaiser, who's at the table. The only question before this court today is whether or not Petitioner's stance in a firing squad equates to, quote, participation in persecution under INA Section 101-842-A when he intentionally disobeyed an order to shoot at an unarmed combatant by shooting over his head. The Court, in its decision at page 74 of the record, relied on that sole incident to determine that he had indeed participated in persecution. He was a colonel in charge of a prison camp? Your Honor, I How about starting with a yes or no? He was a colonel in charge of a prison camp. That included in its population people who had done no more than disagree publicly with the government? I do not know. All right. I do not know that the record reflects why they were in the prison camp, but he did he was he did oversee, I believe, ten prison camps. And he was in the military for about 40 years, is that right? That's correct. And he was present when villages were burned? No. The record does not reflect that. At the judge's decision at page 70, she acknowledges that that is not the case, and I believe in the record at 114 and 115, she acknowledges that other squads would come after the fighters, which he was a member of the fighting squad, and they did do that. And he articulates that he did not participate in that. I believe that also the immigration judge did not rely on any of his employment. I.J. only relied on the firing squad, right? That's correct, at page 74. I take it what you're saying is that if your boss tells you, you and five other guys are going to become part of a firing squad to gun down this person, let's assume for a moment that would be persecution, to gun down this person, and you stand up there with the others, and either with a rifle or a pistol, depending on which story you're telling, you aim your rifle in the person's direction, along with your other five compadres. You all shoot, and the person is actually gunned down, but you shoot over his head. Now, how does that make you not a persecutor? Okay. I will respond to that question by stating that I agree with the Court's recapitulation of the facts, because that is what the Court stated, the immigration judge stated, at page 70 and 71. So I believe she did. Did you agree or disagree? Well, my response to the question is that you're not a persecutor because the test, the legal test under Rodriguez-Mahano-McMillan, and also a matter of Fedorenko, is whether or not the objective effect of your actions resulted in persecution. The objective effect of his actions did not result in persecution because the other six gentlemen killed the individual. Three of the rifle bullets hit the individual, and his pistol shot did not hit the individual, according to the record. So, as I recall, it used to be, or at least I've seen movies to that effect, in our military when you're put up in front of a firing squad, one or two people would be given blanks, but nobody knew who had the blanks for sure. But one or two people would be given blanks, and so there's six people for, by definition, would be doing the killing. Now, are you saying that in that instance, if I could somehow demonstrate that my rifle was the one with the blank, I would not be a persecutor? According to the legal definition that we must follow and that the IG must have followed, which are those three Board of Immigration Appeals decisions, yes. What if I'm a guard at a prison camp and I march around all the time in the prison camp on the out-guarding the peripheries, and when somebody escapes, my job is to shoot them. But somebody's escaping and I shoot over the person's head. Am I now removed from being a persecutor? Because one must individually participate in persecution according to a matter of lipenics, in that instance, if the immigration judge relied on that instance where you shot over his head, then you would not be a persecutor based on that instance. Would I be a persecutor just because I was a guard? Possibly, depending on what the record revealed. Okay. The record would reveal that I was a guard in a prison camp and people were getting killed in there. And I know it, just like this guy knew that somebody was going to be shot down at the stake. I know people are being killed at the prison camp and I'm marching around the periphery. Am I a persecutor? Insofar as you're enforcing, or I should say maintaining the prisoners in the prison by your presence, deterring them from leaving. How about insofar as I'm maintaining persecution of people by having them gunned down at stake, by participating in the squads that are going out to do this. Insofar as I'm doing that, I am fostering the gunning down of people at the stake, because if all six of us said, no, we won't do it, then it wouldn't be fostering that. It sounds like he's got something of an Eichmann defense he's making. Sounds like his defense is something like an Eichmann defense. What is that defense? Well, it's not my fault. I'm a good guy. All I'm doing is putting people in boxcars and shipping them somewhere. That's all I do. I'm not killing anybody. I'm not doing anything. I'm just participating in this whole process that ships them off. Okay. I disagree with the court in that instance because the court's use of the term this whole process. We're talking about one instance where he was ordered to kill someone at and under the threat of death and where he disobeyed that order at his own personal risk because he was a Christian. Didn't he also admit that it was possible that he would only be punished by imprisonment and disgrace if he refused? No.  And I believe that's 137 and 138 of the record. And also he begins testifying at 157 to 162. Let me ask the question a different way because basically the question is, is this persecution? Let's say we had a claim from somebody who was put in front of a firing squad, only the only person firing on was one person. Okay. That person fires over his head and then nothing else happens. Do you think that would qualify as persecution? No, because the objective effect of the individual's actions were not persecutory. No, I'm talking about from the point of view of the person who got shot at. In other words, would that person be able to come to us and come to an asylum officer, an immigration judge, and say, I was persecuted because I was fired on because of one of the protected grounds, even though the bullet missed me? I think the answer is probably yes. I would agree that it's yes because the individual is obviously detained. They're immobile. They can't leave. Well, I mean, after shooting at somebody, you don't have to hit somebody with a bullet for that act to be considered persecution, I guess is my point, right? I don't necessarily agree with that because it would have to be the reason for the shooting, whether it was on account of. I'm just talking about the persecution aspect of it. I mean, the fact that you aim a – if you're the person who is being persecuted, if somebody is trying to shoot you, usually we would say that that could qualify as persecution. Now, if the question is on account, it would be different. Okay. And in response to that comment, I take issue with the word trying because in that hypothetical that was presented to me, the individual who shot the gun is not trying. And that is the point. Well, we don't know. See, we get all these cases where the government says, well, there's no evidence that the person was shooting them on account of race, but then the person says, well, no, you have to imply it. Because often persecutors don't communicate their motives at the time. Okay. I understand the concern of the Court. But in this case, that is not the case. We have replete testimony at pages 138, 157-162, 202-205, 263-264 about this incident. And we have two pages of the immigration judge's opinion that discuss the incident. And he repeatedly says that he refused. The Court even referred to that in her decision and that he intentionally shot above the individual's head. The Court did not make a finding of credibility. The Court used that testimony to find that he was a persecutor. So we have to look at the testimony as evidence and determine that he did shoot above the person's head and he intended to do that, and it was because of his religious beliefs. We're over your time. Thank you, Your Honor. Thank you for your argument. We'll hear from the government. May it please the Court. My name is Debbie Monsier and I represent the Attorney General. Before I get to the issue before the Court, I would like to address opposing counsel's allegations that the government has invented and distorted facts and the law in our brief. The Court rejected opposing counsel's reply brief, but I would like to state for the record that every fact alluded to in the government's brief is fully supported by citation to the AR, and they're only in there because they appear in the AR. We stand behind every single sentence in our brief. Turning to the issues, Mr. Johns wrote Mr. Johns has been found to be ineligible for asylum because he participated in the persecution of others based on the incident at Thin Law in 1959, i.e., the summary firing squad execution of the Karen prisoner. He attempts to distinguish, he attempts to bring the facts of his case within the Rodriguez-Mahano exception to persecution, i.e., if the incident occurs in the context of a civil war, it's not exception, it's not persecution. And also he attempts to bring it within the Hernandez exception, which is the Eighth Amendment in Acts Against Guerrillas. Is shooting an enemy soldier persecution? Your Honor, in this case... Let's start there. In the context of war, Your Honor, no, it is not persecution. In the context of civil war, is shooting an enemy soldier persecution? That is a question that's dependent upon the facts, Your Honor. In some circumstances it might be. In some circumstances it might not be. In some cases it may not be because we probably wouldn't call both sides of our civil war persecutors, at all times anyway. Okay. So what makes this persecution is that it violates the international laws of war. No, Your Honor. You don't tie up POWs and gun them down, is that right? Well, no, Your Honor. What makes it persecution? The Attorney General has not collapsed the law of war with the law of the refugee law or the law regarding asylum or protection under the asylum statute. What makes this persecution? This was persecution, Your Honor, because it is not clear from the record, and in fact the record indicates otherwise, that this was in the context of a civil war. Let's say we notice in context of guerrillas, civil warfare, I think he said that they were fighting a civil war in their country at all times. Let's assume it is in the context of civil war. They've captured an enemy person, they've tied him to a stake, and now they're going to execute him summarily. Is that persecution, is my question to you? Yes, it is, Your Honor. Why? Because there are certain norms of the treatment of prisoners that that does not. That treatment does not. So the answer to my first question is what makes it persecution that violates the international laws of war is your position. Is that right? You seem to be saying that now. No, I don't think I am saying that, Your Honor. What are the norms we're talking about? I'm sorry, I didn't hear that. What are the norms you are speaking of then? The norms I'm speaking of are not necessarily the norms as codified in the law of war as signed in U.N. conventions. I know what they're not. What are they? The norms are whatever the Attorney General frankly determines them to be. If the Attorney General says this man committed persecution, then it's our position he committed persecution. So your position is there's no reason to even question it here. If the Attorney General says that my stepping on a cockroach is persecution, it is. It's de facto persecution. Is that true? Is that what you're saying? No, Your Honor. We would just urge the Court to accord some deference to the Attorney General in his construction and interpretation of the immigration laws, particularly with respect to who constitutes a persecutor and who is ineligible for asylum. So your position would be that if the Attorney General says that any time you tie somebody to a stake and execute them in the midst of warfare, where among other things you say the way this war is conducted, neither side takes any prisoners. That's just how it is. You don't take prisoners we can't afford to. We can't afford to put them up. If they captured us, they put us in front of a firing squad. If we captured them, we put them in front of a firing squad. But if the Attorney General says that it's always persecution, then it is, and that's the end of our inquiry. Is that your position? It is our position that the Court should accord some deference to the Attorney General's interpretation of the statute. Okay, I'll give him some. How much? Considerable deference, as the Supreme Court has suggested, Your Honor. I'll give him lots of deference. If he says this is persecution, therefore it is because it's close enough, is that your position? Yes, it is, Your Honor. Okay. But then turning the example around, you're basically saying that in times of military strife, if someone is fired on by a military group, that's automatically considered persecution from the victim's point of view, which has not been the government's position in many cases. In other words, if it's a civil patrol, if it's military, whatever, they say, well, that's different. That's war. If you're fired on in war or civil discord, that can't possibly be persecution. I see an inconsistency. Can you help me? Yes, Your Honor. First of all, it is not our position that this incident occurred in the context of civil war. There had been ongoing rebellion in the deltas in Burma. There was no state of civil war going on there. These were guerrillas, the Karen guerrillas. One of the individuals whom Mr. Johns persecuted before he summarily executed this man was an individual who was merely suspect because he had assisted the Japanese during World War II. It is not clear that this was civil war number one, so therefore we can't say that we can't draw these broad rules that if someone is fired upon in the course of civil war or is the recipient of bullets that they would or would not be persecuted. Maybe they're enemy combatants. That's another issue for another day probably, Your Honor. But in this particular context. I think all three of us are having trouble with this same concept. It's clear from reading this record that the reason this individual was summarily executed was because of the individual's actions and beliefs. And ordinarily that would, I think most fair-minded people would agree that that constitutes persecution. But if it were in the context of active combat war, be it civil, guerrilla, insurgency or otherwise, does that change it? Your Honor, it does change it. And the Board has addressed this very issue in Rodriguez-Mohano. In Rodriguez-Mohano, the Board said if acts occur in a civil war that are ordinarily incident to warfare, i.e., bombing a military convoy, attacking a military barracks, the engagement of forces, that itself would not, those acts would not be considered persecution. Here, the Attorney General has decided that the detention and the tying up of this man and the summary execution of him was not a normal incident of a civil war as understood within the Rodriguez-Mohano framework, and thus does constitute persecution. Before my time expires, I just quickly want to address a couple issues opposing counsel has raised. Number one, that Mr. Johns was acting on orders from his superiors to tie up, to execute this man. The record, it is clear in the record that in 1959, Johns was promoted from an enlisted man to an officer. He went through officer training. He became a second lieutenant. Upon his promotion to second lieutenant, he was assigned to a special force operating out of the Deltas, that Special Force 107. The first incident described in the record in his testimony, in his own words, is the beating death of the elderly man who was suspected of being a Japanese collaborator. But the only thing in front of us is the shooting at the stake. That is the only incident that I.J. explicitly relied upon to find persecution. However, the I.J. was informed. It's the only thing in front of us. Would you just address that? Okay, Your Honor. But just returning to that point, he was in command, in a command position when he fired upon the Karen guerrilla. He was a second lieutenant. He was platoon commander of that platoon. Is it clear from the record that he was the senior officer present on the scene? It's clear he was not the senior officer on the scene with respect to the actual execution of the man. He was most certainly, as platoon commander, the senior officer on the scene when they captured the Karen guerrilla and brought him back to headquarters. So he was not a peon enlisted guy just operating on orders. He has some accountability as a commissioned officer. Finally, there's a lot of back and forth between opposing counsel and the government about the facts in this case. The real truth is Mr. Johns changed his testimony repeatedly. He wrote one thing in his asylum application. He said something else during direct examination. He would then change his story. With respect to this shooting above the head of the Karen guerrilla, at one point he testified that they murdered the Karen guerrilla in retaliation for the murder of three of their guys a couple weeks before. And he only came up with this shooting above the head story after having testified about it several times. So that wasn't his first story. In conclusion, Your Honor, we would ask the Court to affirm the decision of the BIA and deny the petition for review. Thank you. Thank you for your argument. Counsel, the government went a minute over their time. We'll give you a minute to rebut if you want. Your Honor, the only thing I have to add is that I do not believe that Respondent changed his testimony at any time. I believe that everything he said, even as a pro se individual, which he was initially, is consistent. I believe that under Artiga-Tertius, because there is no finding by the BIA or the immigration judge as to his credibility, that he is credible. And that as a result, if we look at all the pages that I previously cited directly before I sat down, that he is credible. I believe that he did not shoot the individual he intentionally shot above his head. And the objective effect of his actions did not further persecution. And under the law, that means he did not, quote, participate in persecution. The reason why I avoided what the intent questions before is because the law does not take into account intent. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision. And the court will stand in recess for the day. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Fernandez, Hawkins, Thomas